# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| EDWARD LEE DISCHER , <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 3:15-cv-0197 RRB <br><br><br> **ORDER GRANTING MOTION TO REMAND AT DOCKET 17** |

## I. INTRODUCTION

Claimant, Edward Lee Discher, filed an application for Disability Insurance Benefits and Supplemental Security Income on August 26, 2013, which Defendant, the Commissioner of Social Security, denied. Claimant has exhausted his administrative remedies and seeks relief from this Court, arguing that the Commissioner's decision that she is not disabled within the meaning of the Social Security Act is not supported by substantial evidence. Claimant seeks a reversal of the Commissioner's decision and a remand for further proceedings.

Claimant has filed an opening brief on the merits, construed by this Court as a motion for summary judgment. Defendant opposes, arguing the denial of benefits is supported by substantial evidence and free of legal error. Claimant has replied. Docket nos. 17, 19 & 20. For the reasons

set forth below, Claimant's Motion at **Docket 17** is GRANTED and this matter is REMANDED for further consideration.

## II. STANDARD OF REVIEW

The findings of the Administrative Law Judge ("ALJ") or Commissioner of Social Security regarding any fact shall be conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g)(2010). A decision to deny benefits will not be overturned unless it either is not supported by substantial evidence or is based upon legal error. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)). "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Such evidence must be "more than a mere scintilla," but also "less than a preponderance." *Id.* at 401; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). In making its determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452-53 (9th Cir. 1984).

## III. DETERMINING DISABILITY

The Social Security Act (the "Act") provides for the payment of disability insurance benefits ("DIB") to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a) (2012). In addition, supplemental security income

benefits ("SSI") may be available to individuals who are age 65 or over, blind or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1381 (2012). Disability is defined in the Social Security Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A) (2012). The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A) (2012).

The Commissioner has established a five-step process for determining disability. Claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at step five. *Id.* The steps, and the ALJ's findings in this case, are as follows:

**Step 1.** Determine whether the claimant is involved in "substantial gainful activity. **Here the ALJ found that Claimant had not engaged in substantial gainful activity since January 1, 2013, the alleged onset date. Tr. 14.**

**Step 2.** Determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities, and does not consider age, education, or work experience. The severe impairment or combination of impairments must satisfy the twelve-month duration requirement. **The ALJ determined that Claimant had the following severe impairments: arthritis, degenerative disc disease, hypothyroidism, and chronic obstructive pulmonary disease (COPD). Tr. 14. The ALJ specifically found that Claimant's depression was not severe.**

**Step 3.** Determine whether the impairment is the equivalent of a number of listed impairments listed in 20 C.F.R. pt. 404, subpt. P, App. 1 that are so severe as to preclude substantial gainful activity. If the impairment is the equivalent of one of the listed impairments and meets the duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step. **According to the ALJ, the Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 15.**

**Residual Functional Capacity**. Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed. This RFC assessment is used at both step four and step five.[1] **In evaluating his RFC, the ALJ concluded that Claimant has the RFC to perform light work with some limitations. Tr. 16.**

---

[1] 20 C.F.R. §§ 404.1520(a)(4)(2011); §416.920(a)(4) (2011).

**Step 4.** Determine whether the impairment prevents the claimant from performing work performed in the past. At this point the analysis considers the claimant's residual functional capacity and past relevant work. If the claimant can still do his or her past relevant work, the claimant is deemed not to be disabled. Otherwise, the evaluation process moves to the fifth and final step. **The ALJ found that the Claimant cannot perform his past relevant work as a construction worker, truck driver, or rock crusher. Tr. 21.**

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of his or her age, education, and work experience, and in light of the residual functional capacity. If so, the claimant is not disabled. If not, the claimant is considered disabled. **Based on the testimony of the vocational expert, the ALJ found that there are jobs that exist in significant numbers in the national economy that Claimant can perform, including small parts assembly, ticket taker, and flagger/construction. Therefore, he is not disabled. Tr. 22-23.**

Claimant bears the burden of proof at steps one through four. *Tackett*, 180 F.3d at 1098. The burden shifts to the Commissioner at step five. *Id.* The Commissioner can meet this burden "(a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Id.* at 1099. The Medical-Vocational Guidelines are commonly referred to as "the grids." If a claimant's residual functional capacity and vocational characteristics correspond precisely to the grids, the grids are used to direct a finding of "disabled" or "not

disabled."[2] The grids may be used alone at step five where they "completely and accurately represent a claimant's limitations. . . . In other words, a claimant must be able to perform the full range of jobs in a given category, i.e., sedentary work, light work, or medium work." *Tackett*, 180 F.3d at 1101. The Ninth Circuit has explained that significant non-exertional impairments, such as poor vision or inability to tolerate dust or gases, may make reliance on the grids inappropriate. *Id.* at 1101-02. Pain can be a non-exertional limitation. But mere allegation of a non-exertional limitation "does not automatically preclude application of the grids. The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." *Id.* at 1102. Where the grids do not accurately reflect the claimant's limitations, the testimony of a vocational expert is necessary.

In order to be eligible for disability benefits, Claimant must demonstrate that he was disabled prior to June 30, 2016, (Tr. 14), the date he was last insured for social security disability purposes. *Morgan v. Sullivan*, 945 F.2d 1079, 1080 (9th Cir. 1991). Claimant's eligibility for supplemental security income benefits (SSI) is not dependent upon the date last insured. The significant date for disability compensation is the date of <u>onset</u> of the disability, rather than the date of diagnosis. *Id.* at 1081. Neither the ALJ nor the claimant is bound by the claimant's alleged onset date, the date of diagnosis, or the date a claimant loses her job. Rather, "the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence or record." *Goodson v. Bowen*, 639 F. Supp 369, 373 (W.D.N.C., 1986) (citing SSR 83-20).

---

[2] 20 C.F.R. pt. 404, Subpt. P, App. 2, § 200.00.

## IV. DISCUSSION

**A. Issues on Appeal**

The Court finds no error in the ALJ's analysis and findings under the first four steps, and Claimant does not contest the ALJ findings under these steps. Rather, Claimant complains of a flawed RFC finding, and errors at Step 5. The issues before this Court are addressed in turn below.

**1. Rejection of Treating Physician's Opinion**

Dr. James S. Cabeen, D.O., served as Claimant's primary care physician from 2010 through the date of the 2014 hearing. Dr. Cabeen filled out a Medical Source Statement on February 25, 2014, which suggested significant limitations associated with chronic pain, arthritis, fatigue, and depression in addition to the medication side effect of sedation. Tr. 376. Dr. Cabeen indicated that Claimant's prognosis was "poor, ultimately crippling." *Id.* Claimant complains that the ALJ failed to adequately explain the rejection of Dr. Cabeen's opinion, which established limitations far greater than those set forth in the ALJ's RFC finding. Docket 17 at 3-11.

With respect to Dr. Cabeen's opinions, the ALJ found only that:

> some weight is given to Dr. Cabeen's opinions in Exhibit 5F in that Dr. Cabeen found the claimant capable of performing less than full range of light work. However, the severity of limitations is not accepted as it is internally inconsistent with Dr. Cabeen's own physical examinations where the claimant is reported to be neurologically intact with minimal findings on imaging studies.

Tr. 21. The ALJ did not cite the record in support of these two sentences giving only "some weight" to the only recent treating physician in the record. Rather, the ALJ, upon reviewing Dr. Cabeen's medical source opinion, found the *Claimant's statements* concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. Tr. 19. "But an ALJ does not provide

clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the *patient's* complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-200 (9th Cir. 2008) (citing *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir.2001))(emphasis added).[3]

The Commissioner cites to the medical record to show that despite Claimant's complaints of pain, Dr. Cabeen's notes reflect that Claimant could move with a normal gait, and had normal strength and range of motion despite the pain. Docket 19 at 7. These findings, the Commissioner argues, support the ALJ's conclusion that Dr. Cabeen's opinions about the severity of Claimant's condition were not reliable.

Claimant complains that the ALJ did not acknowledge or discuss the length of Dr. Cabeen's treating relationship, or the significance of Dr. Cabeen's familiarity with Claimant's medical history. *See* 20 C.F.R. § 404.1527(c)(2)(I) (requiring that treatment relationship and length of treatment relationship be considered). Moreover, "to reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198 (citations omitted). Finally, the opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. *Id.*

In this case, there were no other physicians, examining or non-examining, who offered any opinions regarding Claimant's condition. Furthermore, the Claimant argues, and the Court notes,

---

[3] *See* section 2 below for a discussion of Claimant's credibility.

that Dr. Cabeen's opinion contains specific diagnoses with identified signs and symptoms of the conditions, all of which are documented in the treatment record. Docket 17 at 10.

The ALJ makes a negative inference from the lack of treatment sought by Claimant, despite the fact that the record repeatedly references that Claimant had no insurance and could not pay for needed treatment. Tr. 368, 340, 338, 336, and 349. Claimant relies upon SSR 96-7p which the Court notes was Superseded by SSR 16-3p effective March 28, 2016.

> [I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. **We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment** consistent with the degree of his or her complaints. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints.

SSR 16-3p. When considering an individual's treatment history, SSR 16-3p says the ALJ may consider that "An individual may not be able to afford treatment and may not have access to free or low-cost medical services." *Id.* Here, the ALJ commented only that "[w]hile financial constraints may have affected his ability to obtain medical care, one would still expect to find a greater degree of effort to alleviate symptoms if they were as limiting as alleged. The sporadic medical care casts significant doubt on the extent to which the claimant has been limited by symptoms." Tr. 20. Nevertheless, the ALJ failed to question Claimant or request a medical evaluation prior to making her decision. If there is insufficient evidence to determine whether a Claimant is disabled, the SSA may recontact the treating physician, may request additional existing records (*see* § 404.1512), or

may ask the Claimant to undergo a consultative examination at SSA expense (*see* §§ 404.1517 through 404.1519t). 20 C.F.R. § 404.1520b(c)(1). The Court is not persuaded by the Commissioner's argument that the record was adequate for the ALJ to reach a conclusion that Claimant is not disabled, while also being inadequate to justify Claimant's complaints. Docket 19 at 9.

## 2. Claimant's Credibility

On the issue of Claimant's credibility, the Court notes that the ALJ improperly discredited the Claimant on several points:

> [O]ther evidence of subjective inconsistency is evidenced by his self-report, where he indicated that he could walk 100 feet before needing to rest for a couple of minutes (Ex. 11E/6) yet, in the Pain Questionnaire, he indicates that he can walk 50 yards. (Ex. 4E/3). The claimant testified that he has not hiked or hunted since 2007 yet, in his self-report, the only thing he reported was that he no longer hikes. (Ex. 11E/5). . . . He states in one report that he is able to shop in stores approximately four times a week for 20 minutes each time. (Ex. 8E/4) Then in the subsequent report a month later, he states he shops once or twice a week. (Ex. 11E/4) . . . This causes the undersigned to question the reliability of the claimant's complaints.

Tr. 20.[4] The Court fails to see the "inconsistency" of Claimant estimating he could walk 100 feet in October 2012 versus 150 feet (or, 50 yards) a year later in October 2013. Tr. 247, 313. Both of these are very short distances, one estimated in feet and the other in yards. Similarly, Claimant stated in 2012: "Like to hike and hunt and fish but can't hike anymore cause of my hips," (Tr. 312), and later testified in 2014 that he hasn't "hiked or hunted" since 2007. Tr. 45. The Court disagrees with the ALJ that these two statements are inconsistent. The ALJ seems to think one can hunt without

---

[4] The Court notes that the form filled out at Ex. 11E was a "Third Party Report," not a self-report, although it appears to have been filled out by the Claimant. Tr. 315.

*Discher v. Colvin*, 3:15-cv-197 RRB
ORDER GRANTING MOTION TO REMAND - 10

hiking. In any event, this could have been clarified at the hearing by simply asking Claimant when he gave up hunting and fishing.[5] Although the ALJ specifically mentioned Claimant's attempt to start his motorcycle in November 2012, the ALJ failed to acknowledge that Claimant's November 2012 attempt to start his motorcycle resulted in a doctor visit due to low back pain. Tr. 393. Neither is the Court persuaded that Claimant's suggestion that he shops "once or twice a week" on one form and as many as "four times a week for 20 minutes" on another form is evidence of Claimant being disingenuous.[6] Overall, the ALJ's finding that Claimant lacked credibility is unsupported by the ALJ's own examples, let alone substantial evidence. "Where the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited, 'we will not remand solely to allow the ALJ to make specific findings regarding that testimony.' . . . Rather, that testimony is also credited as a matter of law." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (citing *Varney v. Secretary of Health and Human Services*, 859 F.2d 1396, 1401 (9th Cir. 1988)).

Here, Claimant testified that he has difficulty pulling clothes out of the washing machine, because of arthritis in his knuckles and hands which "swell up so bad sometimes that I can't even hold onto a hammer. . . I'd be pounding nails and a hammer would fly out of my hand." Tr. 47. The swelling is worse in his dominant right hand. *Id.* Claimant's arthritis is documented in the Medical

---

[5] The ALJ was very concerned about Claimant's August 2011 fishing successes, but the Court notes that August 2011 was sixteen months prior to the alleged onset date of disability. Neither of Claimant's statements indicate he gave up fishing prior to 2012, if at all.

[6] Despite the ALJ's finding that these two estimates were made only one month apart, the Court notes that the report filled out at Ex. 8E is undated. Tr. 279.

Source Opinion, where Dr. Cabeen also opines that Claimant has limitations in doing repetitive reaching, handling or fingering. Tr. 377. Claimant's arthritis, as well as the limitations in his hands to which Claimant testified, was not included in the hypotheticals presented to the vocational expert. Accordingly, the Court finds that the ALJ's conclusion that Claimant is not disabled because he could perform work as a small parts assembly, ticket taker, or flagger (Tr. 22-23) is not supported by substantial evidence.

### 3. The ALJ's Failure to Consider Plaintiff's "Borderline Age Situation"

Claimant notes that he was four months short of his 55th birthday on the day the ALJ issued her decision. Docket 17 at 11. He argues that at age 55 he would have been considered a person of "advanced age," and that application of the vocational factors of age, education and prior work, without any transferrable skills, and a maximum exertional capacity of light work results in a presumptive finding of "disabled" pursuant to the grids. *See* 20 C.F.R. Part 404, Subpt. P, App. 2, Rule 202.02. The C.F.R. provides that the Commissioner will not apply the age categories mechanically in a "borderline situation," which exists when there would be a shift in results caused by the passage of a few days or months. *See* 20 C.F.R. § 404.1563(b). The Commissioner argues that there is no fixed guideline for when to apply the older age category, and the ALJ committed no error.

Claimant is correct that according to the ALJ's findings, and pursuant to the grids, as of his 55th birthday he would have been presumptively disabled under Rule 202.02. "'[W]here application of the grids directs a finding of disability, that finding must be accepted by the Secretary . . . whether the impairment is exertional or results from a combination of exertional and non-exertional

*Discher v. Colvin*, 3:15-cv-197 RRB
ORDER GRANTING MOTION TO REMAND - 12

limitations.'" *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115–16 (9th Cir. 2006)(citing *Cooper v. Sullivan*, 880 F.2d 1152, 1157 (9th Cir.1989)). "Because the grids are not designed to establish automatically the existence of jobs for persons with both severe exertional and non-exertional impairments, they may not be used to direct a conclusion of nondisability. *See Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir.1999)." *Id.* "In other words, where a person with exertional and non-exertional limitations is 'disabled' under the grids, there is no need to examine the effect of the non-exertional limitations. But if the same person is not disabled under the grids, the non-exertional limitations must be examined separately." *Id.* The ALJ hearing occurred prior to Claimant's 55th birthday, and although the ALJ and the vocational expert both noted Claimant's age of 54, neither addressed the significant impact that Claimant's next birthday would have under the grids. The Court concludes that Claimant should have been – at a minimum – awarded benefits as of his 55th birthday, which occurred shortly after the ALJ hearing.

## V. CONCLUSION

A decision of the Commissioner to deny benefits will not be overturned unless it either is not supported by substantial evidence, or is based upon legal error. "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The Court has carefully reviewed the administrative record, including extensive medical records. The Court concludes, based upon the record as a whole, that the ALJ's decision denying disability benefits to Claimant was not supported by substantial evidence.

Upon remand, the ALJ shall:

1. Give adequate weight to Claimant's sole treating physician, or provide specific and legitimate reasons supported by substantial evidence for rejecting the treating physician's opinions;

2. If the Claimant's sole treating physician – the only medical opinion in the record – is not given great weight, the ALJ shall contact the treating physician for clarification of Claimant's condition prior to his 55th birthday;

3. Regardless of the outcome of the ALJ's analysis above, Claimant shall be awarded benefits as of his 55th birthday.

## VI. ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that the Claimant's Motion for Summary Judgment at **Docket 17** is **GRANTED** and this matter is **REMANDED** for further proceedings consistent with this opinion.

**IT IS SO ORDERED** this 14th day of October, 2016.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE